1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SIDI MOHAMED ABDERRAHMANE DAHY, | . | Civil Action No. 1:17cv1040 |
| Plaintiff, | . | |
| vs. | . | Alexandria, Virginia |
| | . | June 8, 2018 |
| RENTGROW, INC., | . | 10:00 a.m. |
| Defendant. | . | |

. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:　　　　　DREW D. SARRETT, ESQ.
　　　　　　　　　　　　　　The Sarrett Law Firm PLLC
　　　　　　　　　　　　　　513 Forest Avenue, Suite 205
　　　　　　　　　　　　　　Richmond, VA 23219


FOR THE DEFENDANT:　　　　　KENNETH J. NICHOLS, ESQ.
　　　　　　　　　　　　　　Nixon Peabody LLP
　　　　　　　　　　　　　　799 - 9th Street, N.W.
　　　　　　　　　　　　　　Suite 500
　　　　　　　　　　　　　　Washington, D.C. 20001-4501


ALSO PRESENT:　　　　　　　SIDI MOHAMED ABDERRAHMANE DAHY
　　　　　　　　　　　　　　DANIELLE PARRINGTON, ESQ.


OFFICIAL COURT REPORTER:　　ANNELIESE J. THOMSON, RDR, CRR
　　　　　　　　　　　　　　U.S. District Court, Fifth Floor
　　　　　　　　　　　　　　401 Courthouse Square
　　　　　　　　　　　　　　Alexandria, VA 22314
　　　　　　　　　　　　　　(703)299-8595


(Pages 1 - 16)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Civil Action 17-1040, Sidi Mohamed
 3   Abderrahmane Dahy v. Experian Information Solutions, Inc., et
 4   al.  Will counsel please note their appearances for the record.
 5            THE COURT:  Mr. Sarrett?
 6            MR. SARRETT:  Good morning, Your Honor.  Drew Sarrett
 7   here on behalf of Mr. Dahy, and he's present in court today as
 8   well.
 9            THE COURT:  Good morning.
10            MR. NICHOLS:  Good morning, Your Honor.  Kenneth
11   Nichols again on behalf of RentGrow, Inc.  With me today at
12   counsel table is Danielle Parrington, an in-house lawyer with
13   RentGrow.  She is a lawyer but is not admitted to this bar
14   but -- and does not plan to speak, but if it's all right, she'd
15   like to sit at counsel table.
16            THE COURT:  Of course.  That's all right.
17            And this is before the Court on the defendant's
18   motion for summary judgment.  I assume because you are here
19   that there was no effort made to try to resolve this case.  I
20   don't believe you contacted Judge Nachmanoff's chambers; is
21   that correct?
22            MR. NICHOLS:  We did not contact Judge Nachmanoff's
23   chambers; that's correct, Your Honor.  We did make efforts to
24   try to resolve the case but were not successful.
25            THE COURT:  All right.  Well, this is a final motion
```

1    because the Court has looked carefully at the paperwork here.
2    The real issue in this case is whether or not the defendant
3    employed reasonable procedures to assure maximum possible
4    accuracy of the credit information that was provided in this
5    case.  This is one count that's against your client under
6    1681e(b) of the statute, and you've provided evidence
7    explaining that your normal practice is to, among other things,
8    go to Experian as the credit source, the source of much credit
9    information.
10             You've put on evidence, as I understand this record,
11   and I don't believe it's really refuted by the, by the
12   plaintiff, that the volume of your business is quite extensive,
13   that you issue thousands and thousands of these reports, that
14   you've had a very low rate of complaints about inaccuracy, and
15   that there would be no reasonable way in which you could be
16   expected to look beyond what an agency like Experian gives you,
17   and Experian is one of what is, everybody knows is the "big
18   three" in terms of credit reporting agencies upon which all
19   kinds of financial institutions base their lending and other
20   types of consumer decisions -- commercial decisions.
21             So, Mr. Sarrett, you need to explain to the Court
22   what evidence there is in this record that's truly in dispute
23   as to the reasonableness of the procedures that were used by
24   the defendant because the burden is on you to show that.
25             MR. SARRETT:  Yes, Your Honor.  Thank you for hearing

1  me.  In the defendant's initial opening brief in support of
2  motion for summary judgment, there was reference made to FTC
3  guidance related to reliance on so-called reputable sources of
4  information.  Now, that guidance has been withdrawn because of
5  Dodd-Frank and the fact that the CFPB has taken over the
6  enforcement or regulation of the FCRA, but what that guidance
7  actually says is you have the right to rely on a reputable
8  source of information if there's no indication that there could
9  be any inaccuracies in that information, if there's no
10 indication that the information you're receiving from that
11 source is implausible on its face.
12         In this case, the report that was prepared by the
13 defendant regarding Mr. Dahy, I submit, has evidence of facial
14 implausibility.  For instance, it states a notice that says the
15 Social Security number does not match to the Social Security
16 number that was provided to Experian.
17         It also says that there's eight credit accounts that
18 were opened before issuance of the Social Security number.
19 There's a different name that is different from Mr. Dahy's as
20 listed as the primary name.  It lists a wrong employer for
21 Mr. Dahy.  It provides an incorrect primary address, and then
22 there's other information that shows a correct spelling of
23 Mr. Dahy's name, and in light of that FTC guidance, when you
24 have information even from a reputable source that's facially
25 implausible, that heightens the duty that the reporting

5

1 institution, in this case RentGrow, has to investigate whether
2 or not that facially implausible -- or facially inconsistent
3 information is actually accurate.
4     Additionally, there were several contracts that we
5 attached in our opposition motion, and defendant refers to them
6 as boilerplate language regarding the accuracy and disclaimer
7 of a warranty of accuracy, but I submit to the Court that's an
8 indication, the language in those contracts, in which Experian
9 is telling the defendant we are not warranting or guaranteeing
10 the accuracy of this information. We are not warranting that
11 this information is fit for a particular purpose. That is
12 indicia that it was not, in fact, reasonable for the defendant
13 to rely on Experian's credit reporting.
14     Additionally, the defendant in its deposition
15 acknowledged that it was aware that Experian sometimes mixed up
16 consumer credit files with the identity -- with another
17 consumer.
18     THE COURT: And I accept all of that. Here's the
19 problem, though. In the -- this is a serious practical
20 problem: My understanding is the way this works is that
21 there's a very short turnaround time, that the rental or the
22 apartment complex wants a response relatively quickly.
23     What you're proposing, and I don't think there's
24 anything in your papers that suggests what a reasonable
25 approach would be for somebody in the defendant's position, how

1  do they conduct this reinvestigation?  How long would it take?
2  What would the expense be?
3            And in the meantime, your client, who's trying to
4  rent this apartment, isn't going to get it because the rental
5  company doesn't have the information that it needs.
6            So the practical reality here -- and you've settled
7  with Experian.  The problem with this case and the real damage,
8  the source of the damage is not this defendant.  It's Experian.
9  Experian messed it up.  Experian should have recognized that
10 there was a problem with what it was reporting, and you've
11 obviously, and I don't know what it was, but you've taken care
12 of that.  You've resolved that portion of the case.
13           So this defendant, the issue here is whether given
14 the realities of this type of business, is it reasonable,
15 moreover, does this defendant have reasonable procedures to
16 assure maximum possible accurate information, and the courts
17 have held essentially that it is not unreasonable for them to
18 rely on one of the "big three" credit reporting agencies.
19           The other problem in this case, as I understand it,
20 because again, that same statute provides that when a consumer
21 does perceive there to be an inaccurate report, there's a
22 reinvestigation obligation on the part of the credit
23 provider -- or the information provider, and your client didn't
24 avail himself of that.  But again, even if he had done that, I
25 assume it would have taken a little bit of time, and I don't

1  know how, how long the apartment complex holds open the rental
2  application.
3           But under the specific facts of this case, where
4  there's no evidence as to what else this defendant could have
5  done under the circumstances within a reasonable amount of
6  time, I don't see any way in which this case goes forward.
7           MR. SARRETT:  Your Honor, may I respond to a few of
8  those points?
9           THE COURT:  Go ahead.
10          MR. SARRETT:  Number one, the contention that the
11 defendant only has a limited amount of time to review this
12 credit report information is belied by the fact that they have
13 a separate, individualized review of civil court record and
14 criminal court record information, so in this case, what
15 happened is the credit information was provided by Experian to
16 RentGrow.  RentGrow then, in fact, did review that information
17 because in the document RG-70 through RG-74, there are a number
18 of scoring parameters that were applied via RentGrow's
19 proprietary algorithm to determine what credit risk Mr. Dahy
20 presented to the landlord.
21          And if you look at that document, RG-70, it shows
22 that they are actually disregarding some of the information on
23 the credit report.  For instance, it says, "Problem Type,
24 Collections, Charge-offs, Judgments, Years/Balances Scored."
25 They only go back two years.

1        So obviously, they are able to delineate between
2   certain pieces of information that are within the credit report
3   and other pieces of information that are within the credit
4   report for the purposes of scoring it for their client, but in
5   addition to that, the specific criminal and civil record review
6   that was at issue for Mr. Dahy which came back clean was not
7   prepared and finalized until September 28, I think four days
8   after he -- the application was submitted and the inquiry was
9   made to Experian.
10       And in the deposition that was taken of
11  Mr. Hennessey, I specifically asked, "Why is there a human
12  review of the civil records information and the criminal
13  records information?  Is that because those sources are less
14  reliable than Experian?"
15       And the response was, "No, not necessarily.  We
16  believe that applying varying laws, we have to review the civil
17  records and the criminal records."
18       And so, in fact, the landlord is not saying we have
19  to have this information immediately because by their
20  defendant's own admission, some of the information isn't coming
21  until three or four days after the application was submitted.
22       Additionally, in this case, Mr. Dahy did not submit a
23  written dispute to the defendant, but in the record, there is a
24  notion that the rental agent on behalf of Mr. Dahy before the
25  report was finalized, because the report is not finalized, the

9

1    complete report, until all the civil records and criminal
2    records are fulfilled, processed, analyzed, and that's reported
3    to the landlord, there's evidence that this rental agent
4    contacted the defendant and specifically said Mr. Dahy disputes
5    that he has bad credit.
6          And so the defendant makes a contention that they
7    have no ability whatsoever to review any of the credit
8    information that's contained in the reporting from Experian,
9    but the reality is that is exactly the service that they offer
10   to their landlord tenants, and that was established in one of
11   the documents that was attached to our opposition to the motion
12   for summary judgment, and that was Exhibit J, and that is a
13   promotional post that contains quotations for Mr. Hennessey,
14   who was the deponent as the 30(b)(6) designee, and what, what
15   he says is, "One of the things we provide is -- to our landlord
16   clients is additionally, we limit their legal exposure by using
17   a neutral third party for their screening process."
18          It is simply incredible for the defendant to say:  We
19   are able to review this credit reporting data in milliseconds
20   to apply our landlord client's scoring criteria through our own
21   proprietary algorithm, but there is no possible way that we
22   could flag a credit report to indicate that when it says the
23   Social Security does not match, that may be indicia of the
24   reporting being inaccurate.
25          And I submit to the Court that under *Dalton*, which is

1   not exactly similar to this case but, I think, has certainly
2   impact on this case, the Fourth Circuit ruled in a case in
3   which the credit reporting agency at issue had relied on a
4   third party, that the question of whether or not the procedures
5   were reasonable were always -- almost always a question for the
6   jury, and *Dalton* quoted a section -- another case in which it
7   said to create a triable issue of fact with respect to
8   reasonableness, a plaintiff need only minimally present some
9   evidence of unreasonableness.
10           They signed a contract with Experian that said we do
11  not warrant or guarantee the accuracy of our information.
12  Their deponent testified that they knew sometimes Experian
13  mixed up files.  Their deponent testified that sometimes
14  consumers had disputed over mixed-up files.  Their deponent
15  testified that they knew there would be some inaccuracies in
16  the credit reporting of Experian.
17           They are reviewing the credit reporting.  That's the
18  service they provide to them.
19           The face of this credit report clearly contains
20  indicia that there are defects in the reporting from Experian,
21  and their defense to that is, simply put, we do not have to
22  review that at all, and I do not believe that to be the law,
23  even though there are certainly some cases making that point,
24  but this case is distinguishable from those cases because
25  before they finalized the report, they had noticed that

1   Mr. Dahy contended that his credit report was not bad, that he
2   had good credit, and they did nothing with that information,
3   they didn't go back to Experian, no one looked at the report,
4   and they simply are regurgitating information that there are
5   certain indicia of inaccuracy, and I think that's enough for
6   the jury to consider it, whether or not the procedures are
7   unreasonable.
8         And again, in *Dalton*, also, the Fourth Circuit didn't
9   make clear whether if something is so facially inaccurate or
10  implausible, whether that on its own is enough for a jury to
11  infer that the procedures were unreasonable.
12        The volume of their credit report screening shows how
13  well they are able to process that credit report screening
14  through their proprietary algorithm to rate and score a given,
15  a given prospective tenant, and so that shows and in my opinion
16  could be inferred from that that there could also be scoring
17  from a different basis to determine whether or not something
18  was accurate or inaccurate.
19        And if the law is that simply by giving an opinion
20  that the, that the source of this credit reporting information
21  is accurate, there will be absolutely no incentive for a
22  defendant like RentGrow to do anything to improve its reporting
23  procedures by getting information from Experian.  All they have
24  to do is simply regurgitate it, even in this case in which
25  before the report is finalized, someone contacts them and tells

1  them there's something wrong here.
2         THE COURT:  All right.  Well, let me ask Mr. Nichols,
3  Mr. Nichols, do you agree that there was a clear communication
4  to your client that Mr. Dahy was contesting the accuracy of the
5  credit report?
6         MR. NICHOLS:  Not a clear one, Your Honor, no.
7  What's important to realize here, and I think this is made
8  clear in our papers, is that when Mr. Dahy was with the JBG
9  rental agent at that time, all the rental agent had was the
10 very top of his consumer report.  All it said was there are,
11 you know, severe collection items and things of that nature.
12        He didn't have the underlying credit lines, right?
13 That was suppressed, and that is something that this client,
14 JBG/Residential, wanted.  They wanted to suppress that
15 information for the privacy of someone like Mr. Dahy, okay?
16        When he -- when the rental agent told Mr. Dahy to say
17 that you have bad credit, that's all he was told, so Mr. Dahy
18 at that time didn't know what the particular inaccuracies were.
19 Nobody did --
20        THE COURT:  But that's not answering my question.
21        MR. NICHOLS:  Okay.
22        THE COURT:  My question was did this agent -- do you
23 agree that the agent reported back to your client that Mr. Dahy
24 was contesting the accuracy of the report?  And that's a
25 representation that's been made by the plaintiff.

1           My understanding is that that person has not been
2   deposed.
3           MR. NICHOLS:  Correct.
4           THE COURT:  So what evidence do we have in this
5   record, this is now summary judgment, if the case were to go to
6   trial, what evidence would there be that that complaint had
7   been communicated to your client?
8           MR. NICHOLS:  There's only one document, Your Honor,
9   and that is a notation from the consumer relations system of a
10  phone call.
11          THE COURT:  Your client?
12          MR. NICHOLS:  Correct.  Of a phone call received from
13  the JBG/Residential individual, the rental agent, saying that
14  I'm here with Mr. Dahy.  His credit report came back, and he's
15  saying that he has good credit, not bad credit.  That's all.
16  There's no written --
17          THE COURT:  All right. What is your -- what, if any,
18  policy does your company have when it gets that kind of a
19  response?  What do you do?
20          MR. NICHOLS:  What we did in this case and what we
21  normally do is we asked the individual, the consumer, to give
22  us some contact information, basically submit a request for
23  your entire credit report, your entire tenant screening report.
24          THE COURT:  And how was that communicated to Mr. Dahy
25  in this case?

1          MR. NICHOLS:  It was -- in this case, it was by, by
2  phone, I believe, and he was given that information through the
3  JBG/Residential agent.  He did then submit by facsimile his
4  Social Security card and a form that we had given him or that
5  form that he had downloaded with that information to ask for
6  the entire report.
7          Then he got the entire report, and that report was
8  attached to an e-mail that said if you see any inaccuracies in
9  the report, please file a dispute with us.  That's the
10 procedure.
11         THE COURT:  And he did not do that.
12         MR. NICHOLS:  Correct.
13         THE COURT:  Yeah.
14         MR. NICHOLS:  Correct.
15         THE COURT:  And the statute does expect the consumer
16 to act in his own best interests as well.  There's no way in
17 which one can expect an agency like the defendant's to know
18 what the problem is.
19         I think under the specific facts of this case, I'm
20 going to find that summary judgment is appropriate.  I don't
21 think any reasonable juror could find that the methodology used
22 by the defendant in this particular case was unreasonable.  The
23 plaintiff has not provided the Court with any evidence, in my
24 view, that would show what the reasonable procedures would have
25 been that were not followed, and in this case, where the

15

1 plaintiff was given the opportunity to assist in having this
2 problem resolved by providing the information so that the
3 reinvestigation could occur, he didn't do that, and that in and
4 of itself, I think, makes the case one for which summary
5 judgment is appropriate.
6 You did raise other issues in your motion for summary
7 judgment, that is, that the plaintiff would have been required
8 to obtain a cosigner regardless of the information. You also
9 argued there were no actual damages as a result of the tenant
10 screening report, and I certainly think that those two issues
11 are meritorious, but I don't have to get into the details of
12 them because the dispositive issue in this case is whether or
13 not your client violated 1681e(b) in the manner in which it
14 conducts these investigations, and I'm finding that it did not
15 act in an unreasonable manner.
16 So I'm going to grant summary judgment. Thank you.
17 MR. NICHOLS: Thank you, Your Honor.
18 MR. SARRETT: Thank you for hearing us, Your Honor.
19 THE COURT: And that does moot the motion in limine,
20 so that resolves all issues in this case.
21 (Which were all the proceedings
22 had at this time.)
23
24
25

15

1  plaintiff was given the opportunity to assist in having this
2  problem resolved by providing the information so that the
3  reinvestigation could occur, he didn't do that, and that in and
4  of itself, I think, makes the case one for which summary
5  judgment is appropriate.
6      You did raise other issues in your motion for summary
7  judgment, that is, that the plaintiff would have been required
8  to obtain a cosigner regardless of the information. You also
9  argued there were no actual damages as a result of the tenant
10 screening report, and I certainly think that those two issues
11 are meritorious, but I don't have to get into the details of
12 them because the dispositive issue in this case is whether or
13 not your client violated 1681e(b) in the manner in which it
14 conducts these investigations, and I'm finding that it did not
15 act in an unreasonable manner.
16     So I'm going to grant summary judgment. Thank you.
17     MR. NICHOLS: Thank you, Your Honor.
18     MR. SARRETT: Thank you for hearing us, Your Honor.
19     THE COURT: And that does moot the motion in limine,
20 so that resolves all issues in this case.
21                  (Which were all the proceedings
22                   had at this time.)
23
24
25

16

1           CERTIFICATE OF THE REPORTER

2      I certify that the foregoing is a correct transcript of

3  the record of proceedings in the above-entitled matter.

6                                    _____/s/_____
                                        Anneliese J. Thomson